UNDERWOOD v. FIRST NAT. BANK OF GALVESTON. (No. 7064.)

(Court of Civil Appeals of Texas. Galveston. March 31, 1916.)

Bankruptcy ☞436(2) — Discharge — New Promise.

In an action on a note and to recover premiums paid by plaintiff upon a life insurance policy issued to defendant and to foreclose a lien upon such policy and upon shares of capital stock of a trust company deposited as collateral security, where defendant admitted the execution and delivery of the note, but denied the transfer of the policy to secure it and set up a discharge in bankruptcy, and where plaintiff claimed a renewal of the promise after the bankruptcy, testimony of plaintiff's president that defendant, though known to be contemplating bankruptcy, applied for and obtained the loan on his promise to take care of it in any event, and that defendant, after his discharge, promised to pay the debt, was admissible on the issue as to a subsequent promise to pay the debt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 841, 865; Dec. Dig. ☞436(2).]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by the First National Bank of Galveston against John C. Underwood. Judgment for plaintiff, and defendant appeals. Affirmed.

M. S. Munson, of Angleton, for appellant. Williams & Neethe, of Galveston, for appellee.

LANE, J. This suit was brought by the First National Bank of Galveston against John C. Underwood to recover upon one certain promissory note for the sum of $450 executed and delivered to plaintiff by defendant, and also to recover the sum of $1,036.28 alleged to be the aggregate amount of certain premiums paid by plaintiff upon a certain life insurance policy issued upon the life of defendant from the 3d day of April, 1911, to date of suit, at the special understanding and request of defendant. Plaintiff also sued for a foreclosure of its alleged lien upon said life insurance policy, and upon five shares of the capital stock of the American Trust Company of Houston, Tex., deposited with plaintiff as collateral security. Plaintiff alleged the execution and delivery of the $450 note by defendant, and that to secure the payment of same defendant transferred to it said five shares of stock, and that for the purpose of further securing the payment of said note and other indebtedness due by defendant to plaintiff defendant transferred and delivered said life insurance policy to plaintiff and requested it to keep all premiums due upon said policy paid as they became due; that at the request of defendant plaintiff paid said premiums, amounting in the aggregate to $1,036.28.

Defendant admitted the execution and delivery of said $450 note, together with the five shares of American Trust Company stock, but denied that the said life insurance policy was transferred to plaintiff to secure the payment of said note, and says that said policy was pledged to said bank to secure the payment of other indebtedness due said bank, which had been paid and fully discharged prior to the bringing of this suit. Defendant also, as a defense to plaintiff's right to recover a personal judgment against him, alleges or sets up in his answer his discharge in bankruptcy on the 4th day of September, 1912, by the District Court of the United States for the Southern District of Texas. Defendant also pleaded the two-year statute of limitation in bar of plaintiff's right to recover the premiums paid by it more than two years prior to bringing this suit, amounting to about $274.92, and denied

that he had ever requested plaintiff to pay any of said premiums.

By supplemental petition plaintiff admitted defendant's discharge in bankruptcy as pleaded by him in his answer, but it says that subsequent to such discharge defendant has repeatedly renewed his former promise, and again agreed, contracted, and promised plaintiff to pay all the sums of money sued for by plaintiff.

The case was submitted to the court without a jury practically upon four issues, to wit:

First. Did defendant, Underwood, request plaintiff to pay the premiums paid by it upon said life insurance policy?

Second. Did said defendant subsequent to his discharge in bankruptcy on the 4th day of September, 1912, promise to pay the sums sued for?

Third. How much, if any part, of the debt sued for was barred by the two-year statute of limitations?

Fourth. Was the said life insurance policy transferred to plaintiff to secure the payment of the indebtedness sued upon?

All these issues were found by the court in favor of plaintiff, except upon the question of limitation. Upon that issue the court found that of the sum of $1,036.28 paid by plaintiff as premiums on said insurance policy the sum of $274.92 was barred. Upon such findings personal judgment was rendered for plaintiff against defendant for the sum of $617.37, principal, interest, etc., due upon the note sued upon, and for the sum of $718.28 due for premiums paid upon said insurance policy, aggregating the sum of $1,-336.65. From this judgment defendant, Underwood, has appealed.

The court permitted R. Waverly Smith, president of plaintiff bank, to testify that defendant, Underwood, had applied to him, as such president, for a loan of $450, and stated that he needed it badly for some personal reason, matters that were pressing on him of a personal nature which were outside of his regular business; that he knew at the time that Underwood was insolvent, and that he was contemplating bankruptcy proceedings; that he was at that time largely indebted to the bank, but, as Underwood said he would see that such sum was repaid in any event and that he could rely on his taking care of it, and as he had known Underwood and his family for a great many years, and had confidence in his integrity, he relied on him and let him have the money for which the $450 note, of date May 10, 1912, was executed.

This testimony, and other testimony of similar nature by the witness Catterall, cashier of the bank, was admitted over the objection of defendant, and such admission is assigned as error, and is presented as such by appellant's first, second, and third assign-

ments, because, he says, such testimony does not tend to prove a promise to pay said debt subsequent to his discharge in bankruptcy, nor any other material matter, but to prejudice the court against defendant.

Smith and Catterall, president and cashier, respectively, of the appellee bank, testified that appellant, Underwood, had after his discharge in bankruptcy promised to pay the debts sued for. Appellant, Underwood, testified positively that he had made no such promise. Thus it appears the main issue in the case was sharply contested.

In giving a reason for the admission of the testimony objected to the trial judge said:

"The facts and circumstances under which the indebtedness on the note and for the life insurance premiums was incurred and the interviews and correspondence between the parties relating thereto before the bankruptcy were admitted in evidence for the light they tended to cast upon the truth of the controverted fact whether there had been a subsequent promise to pay the same."

We think the testimony was admissible for the purpose for which it was admitted, and that the court did not err in so holding. Appellant's first, second, and third assignments of error are therefore overruled.

The substance of appellant's fourth, fifth, and sixth assignments is that it is admitted that appellant had been discharged from all his debts made prior to September 4, 1912, the date of his discharge in bankruptcy, and that the debts sued on were such debts from which he had been discharged, and, as there was no evidence showing that he had made any promise to pay said debts subsequent to such discharge, the court erred in rendering a personal judgment against him for $1,336.-28 in favor of appellee.

After a careful review of all the testimony offered by both parties, we conclude that, not only was there sufficient evidence to support the judgment rendered, but that the preponderance was in support of such judgment. We therefore overrule appellant's fourth, fifth and sixth assignments.

We find no error in the judgment of the trial court, and therefore the same is affirmed.

Affirmed.